Robert E. Barnes, Wis. St. Bar # 1038252
The Law Office of Robert G. Bernhoft, S.C.
207 E. Buffalo Street, Suite 600
Milwaukee, Wisconsin 53202
(414) 276-3333 telephone
Attorney for the Plaintiffs, appearing *pro hac vice*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

RALPH NADER & DONALD N.DAIEN,

Plaintiffs,

v.

JANICE BREWER, in her official Capacity as Secretary of State of Arizona,

Defendant.

Civil Case No. CV-04 1699 PHX FJM

**MEMORANDUM IN SUPPORT OF NADER AND DAIEN'S**
**MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS**

COME NOW Ralph Nader ("Nader") and Donald N. Daien ("Daien"), the Plaintiffs in the above-referenced matter, by and through their undersigned counsel of record, Robert E. Barnes, and respectfully files this memorandum in support of Nader and Daien's Motion for Attorneys' Fees and Non-Taxable Costs filed on September 12, 2008. (Doc. 74.) Pursuant to Local Civ. R. 54.2(b)(2), the memorandum in support of this motion is required to be filed within sixty days after judgment was entered. After filing a motion for an extension of time to file this memorandum to accommodate Janice Brewer's ("Brewer") Petition for Writ

of Certiorari with the Supreme Court, the Court denied that motion and on its own motion extended the time to file this memorandum until November 17, 2008. (Doc. 77.)

The novelty, complexity and difficulty of the case is evident in the mastery of Constitutional law, arcane Arizona state provisions raised by the state in various defenses related to prior litigation, the fact this court could come to a reasoned conclusion different than the Court of Appeals, the four year delay in payment of fees, and the national significance of the unprecedented victory in the Ninth Circuit establishing new law and new rights for both petition circulators and independent candidates in the state of Arizona. As the founder for the national Center for Competitive Democracy and the leading ballot access experts in the nation observed, this suit was "huge" and "groundbreaking." *See Ballot Access News*, "Huge Ballot Access Victory in 9th," July 9, 2008 (attached to the Decl. of Robert E. Barnes as Exhibit B-1); *see also* "Big Victory for Wesley Snipes' Attorneys in Nader Open Ballot Appellate Ruling," Business Wire, July 9, 2008 (attached to the Decl. of Robert E. Barnes as Exhibit B-2).

**Argument**

1. Eligibility and Standard of Review

Judgment was entered in favor of Nader and Daien on August 29, 2008. (Doc. 72.) Nader and Daien are entitled to reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 because this was an action brought to enforce a provision of 42 U.S.C. § 1983. In turn, Section 1988 requires plaintiffs to be a "prevailing party" in order to be entitled to an award of attorneys' fees and costs.

Nader and Daien filed their complaint on August 17, 2004. (Doc. 1.) The case was a ballot-access case seeking declaratory and injunctive relief. *Id*. After Nader was kept off the Arizona presidential ballot in the 2004 election cycle for reasons related to the qualifications of petition circulators, Nader withdrew his

petitions and opted to file this lawsuit instead.  Nader made two claims on the merits:  first, that the statutory schema governing an independent presidential candidate's access to the Arizona ballot was unconstitutional, and second, that the deadline to submit petitions for ballot access for independent candidates were so early in the election process to be an unconstitutional restriction to the presidential ballot.  *Id*.

The complaint sought the following relief:  (1) a declaration that the statutory schema for qualifying an independent candidate for the presidential ballot violated the United States Constitution;  (2) a preliminary and permanent injunction to enjoin and restrain Brewer and her agents from enforcing that statutory schema;  (3) an order placing Nader and Peter Camejo on the Presidential and Vice-Presidential ballot, respectively, or in the alternative, extending the filing deadline to a more reasonable date sufficient to permit Nader to collect the requisite signature by use of in-state and out-of-state residents;  (4) damages for the costs incurred in complying with and planning to comply with this statutory schema;  (5) damages in the form of an award for attorneys' costs and fees pursuant to 42 U.S.C. § 1988;  and, (6) other equitable and further relief  as the court deemed just and proper.  *Id*.

The preliminary injunction was denied.  (Doc. 21.)  All of the original plaintiffs appealed that decision to the Ninth Circuit and the district court's order was affirmed.  (Docs. 23-24.)  The third and fourth items of relief sought in the complaint became moot with the passing of the 2004 presidential election.  Nader and Daien obtained complete relief on the requests for declaratory and injunctive relief.  (Docs. 70 and 71.)  The appellate court accepted both of Nader's and Daien's claims on the merits, namely, that the statutory schema governing an independent presidential candidate's access to the Arizona ballot was unconstitutional, and that the deadline to submit petitions for ballot access for

independent candidates were so early in the election process to be an unconstitutional restriction to the presidential ballot. *Id*.

An award for attorneys fees and costs is governed by 42 U.S.C. § 1988(b). In relevant part, § 1988(b) reads: "In any action or proceeding to enforce a provision of section[] . . . 1983 of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except [in certain cases involving a judicial officer]." 42 U.S.C. § 1988(b). The district court has subject matter jurisdiction to determine the fee award in its entirety. The Supreme Court interpreted this statute in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), and pursuant to that decision, Nader and Daien are "prevailing parties" and should ordinarily be awarded attorneys' fees because special circumstances do not exist that would render an award unjust. *Hensley*, 461 U.S. at 429.[1]

"The amount of the fee [is] determined on the facts of each case." *Id*. The Supreme Court recognized the general rule that where a plaintiff obtains complete relief, as Nader and Daien did on this appeal, the plaintiff is entitled to a full attorney's fee award without reduction. "'Excessive, redundant, or otherwise unnecessary'" hours should be excluded. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Hensley*, 461 U.S. at 434). "We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Hensley*, 461 U.S. at 440. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id*. at 435.

---

[1] Please see the discussion in section (2) under the header "Entitlement", *infra*, of the Supreme Court's recent decision in *Sole v. Wyner*, 127 S.Ct. 2188 (2007). *Sole* discusses "prevailing parties."

In turn, a fully compensatory fee is calculated by first "multiplying the number of hours reasonably expended on the litigation [by] a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984) (citing *Hensley*, 461 U.S. 424). The analysis centers on two considerations: first, whether the hours expended were reasonable, and second, whether the hourly rate is reasonable. Reasonable hourly rates are determined by "prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895. When determining fees earned in a district court case, "the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). This initial calculation is called a "lodestar."

After the lodestar is calculated by multiplying the reasonable hours by the reasonable hourly rate, the court "may adjust the lodestar upward or downward using a 'multiplier' based on factors not subsumed in the initial calculation of the lodestar." *Van Gerwen*, 214 F.3d at 1045 (citing *Blum*, 465 U.S. at 898-901). As the *Van Gerwen* court held, "[t]he lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen*, 214 F.3d at 1045 (internal quotations omitted). Nader and Daien suggest that no such adjustments should be made because Nader and Daien wholly prevailed on all of their claims and there are no factors existing that will not be considered in determining the reasonable hours and reasonable hourly rate.

2. <u>Entitlement</u>

In this case, Nader and Daien achieved a complete success on appeal. Nader and Daien made two claims on the merits and the Ninth Circuit accepted both of them when they reversed and remanded this case to the district court with

instructions to enter summary judgment in Nader's and Daien's favor. (Doc. 70.) Nader and Daien achieved the "excellent results" referred to in *Hensley* and consequently deserve a "fully compensatory fee." *Hensley*, 461 U.S. at 435. Indeed, Nader and Daien were, at least to date, the "prevailing party" in this litigation.

a. *Prevailing Parties Issues as Discussed in* Sole

Nader and Daien qualify their conclusion they are prevailing parties by the phrase "at least to date" because Brewer filed a Petition for Writ of Certiorari with the United States Supreme Court. The district court's rule requiring that this memorandum be filed within 60 days of the judgment also requires that the party seeking fees show they are both eligible and entitled to the fees. Therefore, the party seeking fees must make a showing that they are "prevailing parties."

The Supreme Court recently held in *Sole v. Wyner*, 127 S.Ct. 2188 (2007), that whether a party has prevailed, as that term is used in 42 U.S.C. § 1988(b), must be determined, not by a specific portion of the litigation, but rather, by the litigation as a whole. Because this case involves an appeal to the Ninth Circuit, Nader's and Daien's status as "prevailing parties" under a *global analysis* of the litigation cannot be determined with finality until either (1) Brewer's time to file their Petition for Writ of Certiorari expired, or (2) the Supreme Court either denies the Petition or deals with the merits of the case after accepting the Petition.

In *Sole*, the plaintiff obtained a preliminary injunction against the defendant, but ultimately lost on the merits, and attempted to make a claim for an award of attorneys' fees as a prevailing party. *Id*. at 2195-96. As the Supreme Court noted in the Opinion's conclusion, the plaintiff "has '[won] a battle but los[t] the war.'" *Id*. at 2196 (quoting *Watson v. County of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002)) (parentheticals within quote in *Sole* Opinion).

With Nader's and Daien's status as a prevailing party necessarily inconclusive until the "war" is over, it would be impossible for Nader and Daien to claim they are eligible or entitled to a fee award, as those terms are used in Local R. 54.2(b), and within the time limits set forth in the rule because Brewer had ninety days to file a Petition for Writ of Certiorari with the Supreme Court. (Indeed, Brewer filed a Petition for Writ of Certiorari with the Supreme Court this last week.) The Supreme Court rejected a piece-meal approach to the determination of fee awards in *Sole* opting rather to determine fees based on the ultimate disposition of the litigation as a whole. Nader and Daien's status is similar to the *Sole* plaintiff in that, like the *Sole* plaintiff, Nader and Daien have prevailed on a *portion* of the litigation by prevailing on appeal, but whether they are "prevailing parties" cannot be determined until Brewer's the Supreme Court has ruled on Brewer's contemplated Petition or on the merits of their appeal.

Nader and Daien understand that the Supreme Court's *Sole* decision holds that prevailing parties are determined by the litigation as a whole. The time constraints in Local R. 54.2(b), being only 60 days within which to file a petition for fees before the appellate court, make it impossible for a plaintiff to claim they are a prevailing party as *Sole* defines that term. A defendant who loses on appeal has 90 days to file a Petition for Writ of Certiorari with the Supreme Court which is much later than the plaintiff's deadline to file a fee petition. Therefore, denying this motion because Nader and Daien cannot make an argument they constitute prevailing parties with finality pursuant to *Sole* and within the time limits set out in the rule would violate due process because it is impossible to make such a determination within 60 days in this case. With that caveat, Nader and Daien will argue they are prevailing parties in anticipation that the Supreme Court will deny Brewer's petition or will rule in favor of Nader and Daien on the merits in the event the Supreme Court accepts Brewer's petition.

b. *Fees for Preparing this Motion and Memorandum*.

Nader and Daien are also entitled to fees for filing this motion and memorandum. Furthermore, should a hearing be required in this matter, Nader and Daien would be entitled to a fee award for the time spent and costs incurred related to that hearing. "[W]e have held attorney's fees may be awarded for time spent litigating the fee issue in Title VII cases." *Kinney v. Int'l Brotherhood of Electrical Workers*, 939 F.2d 690, 695 (9th Cir. 1991) (citing *Manhart v. City of Los Angeles, Dept. of Water and Power*, 652 F.2d 904, 909 (9th Cir. 1981)) (judgment vacated on other grounds). "As we said in *Manhart*, '[i]t would be inconsistent to dilute an award of fees by refusing to compensate an attorney for time spent to establish a reasonable fee.'" *Kinney*, 939 F.2d at 695 (quoting *Manhart*, 652 F.2d at 909).[2] *See also Southeast Legal Defense Group v. Adams*, 657 F.2d 1118, 1126 (9th Cir. 1981) (applying the same rule to fees sought under 42 U.S.C. § 1988). Therefore, Nader and Daien are entitled to the fees necessary to prepare this memorandum and motion, and for all fees necessary to litigate any reply brief or hearing in this fee-related litigation.

3. Reasonableness of Requested Award

As discussed above, the issue to be decided by the district court is determining the proper lodestar. The analysis centers on two considerations: first, whether the hours expended were reasonable, and second, whether the hourly rate

---

[2] *Kinney* also held that fees on appeal were appropriately awarded to the plaintiffs. *Kinney*, 939 F.2d at 695.

is reasonable. *See Van Gerwen*, 214 F.3d at 1045.[3] Furthermore, "[t]he lodestar is presumptively the reasonable fee amount." *Id*.

a. *The Time Spent and Expenses Incurred Were Reasonable*.

The time spent and expenses incurred were reasonable in all respects. First, Barnes has reviewed the invoices and has eliminated duplicative, unnecessary, or excessive time. (Decl. of Robert E. Barnes, ¶ 22) (hereinafter "Barnes Decl."). For example, while it is the general practice in this Firm that briefs get "peer-reviewed" prior to their filing, and that practice is a relatively inexpensive way to proof a paper, we discounted every hour spent by Attys. Christopher Ertl, Jeffrey Dickstein, and Brian Mahany, and also discounted paralegal Marion Hojnacki's hours. (Barnes Decl., ¶ 23.)

The remaining attorneys and paralegal were Attys. Robert Bernhoft and Robert Barnes and Paralegal Daniel Treuden. (Barnes Decl., ¶¶ 16 and 21.) Atty. Robert Bernhoft managed the case and provide support on some of the more complex briefs. (Decl. of Robert G. Bernhoft, ¶ 9) (hereinafter "Bernhoft Decl."). Atty. Robert Barnes performed the lion's share of work on the case. (Barnes Decl., ¶ 24.) Both Bernhoft and Barnes delegated to Daniel Treuden those tasks that could reasonably be delegated because his hourly rate is substantially less. (Barnes Decl., ¶ 21.) Treuden performed research for discreet items, performed all of the document formatting, managed the case, wrote the initial drafts of smaller papers, and small portions of larger papers. (Decl. of Daniel J. Treuden, ¶ 4) (hereinafter "Treuden Decl."). Not only was it convenient to delegate these tasks to Treuden

---

[3] Local Civ. R. 54.2(d)(4) requires that *affidavits* in fee petitions set forth the (A) background of the attorney, (B) the bases for a determination of the reasonableness of the hourly rate, and (C) the bases for the reasonableness of the time spent and expenses incurred. Elsewhere in Local Civ. R. 54.2, the moving party is required to discuss in its *memorandum*, "as appropriate," thirteen factors that bear on a reasonable fee. This section will be organized by discussing why the time spent and expenses incurred are reasonable and then discussing why the hourly rates are

such that Bernhoft and Barnes' time was free to provide additional legal services to their other clients, but it also is financially convenient for our clients, including Nader and Daien, because Treuden's hourly rate is much lower than an attorney's rate. (Barnes Decl., ¶ 25.) *See Richin Security Service Co. v. Chertoff*, 128 S.Ct. 2007 (2008) (holding that prevailing parties in actions governed by the Equal Access to Justice Act are entitled to paralegal fees).

The expenses incurred were also reasonable. All of the costs are the actual costs incurred. This includes the costs for Westlaw legal research. The Wisconsin ethical rules governing expenses do not allow Wisconsin attorneys to mark-up costs as an independent profit margin. (Barnes Decl., ¶ 26.) Because this Firm is considered a "small firm" under Westlaw's definitions, Westlaw provides unlimited access to certain databases in their system for a fixed monthly price. (Barnes Decl., ¶ 27.) Westlaw also keeps track of our research time as we perform it for each client and provides our Firm with a statement allocating the fixed monthly price based on the time spent for each client we perform research for in a given month. (Barnes Decl., ¶ 28.) For example, should a particular client constitute 10% of the research time in a given month, Westlaw will provide a statement showing 10% of the monthly price as attributed to that client. *Id*. and Exhibit H-11, attached to the Barnes Decl. Westlaw limits that allocation to the standard Westlaw rates such that no client will ever be billed for more than the standard Westlaw rates. (Barnes Decl., ¶ 29.) By using this system, the Firm saves its clients substantial research expenses. (Barnes Decl., ¶ 30.)

Because there is no doubt Nader and Daien obtained an excellent result, Nader and Daien should be entitled to compensation for all of the hours and all expenses set forth in this motion and memorandum. "Where a plaintiff has

---

reasonable. The thirteen factors set out in Local Civ. R. 54.2(c)(3) will be touched on as they appropriately bear on whichever half of the lodestar analysis is being discussed at the time.

obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. Nader and Daien's attorneys did not spend time researching issues not relevant to the appeal, nor did their counsel raise frivolous issues on appeal. They exhibited discretion in their billing and based on all of these factors, the hours expended and expenses incurred are reasonable.

b. *The Hourly Rates Are Reasonable*.

The hourly rates are reasonable given Bernhoft and Barnes' comparable skill to litigators in Constitutional and legally complex cases. Nader and Daien are entitled to a reasonable fee.

*1. The Contracts*.

The contract between Nader and Daien and their attorneys was a contingent fee contract. (Barnes Decl., ¶ 3; Exhibit A.) Under the contract, the legal fees and costs were contingent on two things: first, prevailing in the litigation, and second, recovering fees and costs in the litigation. *Id*. The contract also assigns the fee award to the attorneys. *Id*. Daien agreed to the same contractual terms as Nader, but his contract was apparently misfiled. (Barnes Decl., ¶ 31.)

While the issue of a retainer for costs is not specifically addressed in the written contract, Ralph Nader's 2004 campaign organization agreed to fund the costs of the litigation, at least until the election of 2004. (Barnes Decl., ¶ 32.) To that end, a $1,500 retainer was deposited in the attorney-client trust account on September 7, 2004 and invoices were produced up through the election. (Exhibits C through I, attached to the Barnes Decl.) The Nader campaign organization paid a total of $2,897.48 towards litigation costs in this case. (Barnes Decl., ¶ 12.) These payments were for costs and expenses only, and not to be applied against fees. (Barnes Decl., ¶ 13.)

*2. The Hourly Rates.*

As to a reasonable hourly rate, the consideration is governed by "prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895. When determining district court fees, "the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). Furthermore, "a court may also award rates at an attorney's current rate where appropriate to compensate for the lengthy delay in receiving payment." *Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003). The application of current rates remedies the delay in payment an attorney in a civil rights case must face. *See id.*; *see also Copeland v. Marshall*, 641 F.2d 880 (D.C. Cir. 1980) (an hourly rate only will "represent the prevailing rate for clients who typically pay their bills promptly and since court-awarded fees normally are received long after legal services are rendered, and thus a percentage adjustment to reflect delay in receipt of payment may be appropriate.") The Supreme Court approved of the same. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989). Therefore, the court should award the current hourly rate of the attorneys and consider the *current* prevailing rates for attorneys of comparable skill in Phoenix, Arizona when determining the appropriateness of an attorney's hourly rate.

In Phoenix, the hourly rates requested in Nader's and Daien's petition were well below or approximately the same as the hourly rates recently approved by the U.S. District Court for the District of Arizona. On March 30, 2007, the district court awarded $400 as a reasonable hourly rate pursuant to 42 U.S.C. § 1988(b) in a civil rights case. *Agster v. Maricopa County*, 486 F.Supp.2d 1005, 1015 (D. Ariz. 2007). On October 31, 2007, the district court awarded $300 as a reasonable hourly rate for the lead attorney and $125 per hour as a reasonable hourly rate for paralegals. *Societe Civile Succession Richard Guiono v. Beseder, Inc.*, 2007 WL 3238703 (D. Ariz. 2007). On November 26, 2007, the district court awarded $350

per hour as a reasonably hourly rate for attorneys in an ERISA action. *Peterson v. Federal Exp. Corp. Long Term Disability Plan*, 525 F.Supp.2d 1125, 1127 (D. Ariz. 2007) (applying *Hensley*, 461 U.S. 424). As the district court noted in *Agster*, the typical rate several years ago for a skilled civil rights attorney is $300 to $400. *Agster*, 486 F.Supp.2d at 1015.

A fellow district court in this Circuit emphasized the current market rate for civil rights cases that "presumptively apply" must be the "highest rate charged to private clients for complex federal cases in a particular legal market." *Martino v. Carey*, 568 F.Supp. 848, 850 (D. Ore. 1983). Indeed, sister district courts awarded $350 for a sixth year associate $330 for a fourth year associate to reflect contemporary billing rates. *See Caplan v. CAN Financial Corp.*, 573 F.Supp.2d 1244 (N.D. Cal. 2008). When a district court rejected attorney-billing rates of $375 and $400 an hour for an attorney, and $200 an hour for a law student clerk, the Ninth Circuit reversed and remanded with instructions to accept the $375 and $400 as reasonable. *See Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942 (9th Cir. 2007). The reason for insuring competitive market rates for the most skilled attorneys is to enforce Congressional intent:

> In considering the customary fee in a civil rights case governed by § 1988, the court must pay particular attention to the intent of Congress in passing § 1988. The Ninth Circuit has recognized the importance of the Senate Report which accompanied the enactment of Public Law 94-559, § 2 (Oct. 19, 1976), 90 Stat. 2641, which became 42 U.S.C. § 1988, see *American Constitutional Party v. Munro*, 650 F.2d 184 (9th Cir.1981) at p. 187 and notes 6-9. The Supreme Court repeatedly referred to that report in *Hensley v. Eckerhart*, supra, 461 U.S. 424 (1983), 103 S.Ct. at 1933, 1939, 1940 and note 7. The Senate Report, S.Rep. No. 94-1011, 94th Cong., 2d Sess., reprinted in [1976] U.S.Code Cong. & Admin.News 5908, indicates that Congress intended that courts award, generally, the highest rate charged in the area for complex antitrust and commercial litigation: "It is intended that the amount of fees awarded under S. 2278 [42 U.S.C. § 1988] be

> governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases . . ." S.Rep. at 6, [1976] U.S. Code Cong. & Admin. News at 5913 (emphasis added). **Thus, Congress has indicated that in cases under § 1988 the highest rate charged to private clients for complex federal cases in a particular legal market should presumptively apply**.

*Martino*, 568 F.Supp. at 850 (emphasis added).

As to the fees on appeal, the district court should consider the forum in which the appellate court sits. Consequently, the Northern District of California is an appropriate district court from which show the prevailing rates in that community. On July 24, 2008, $375 was approved as a reasonable rate. *Camacho v. Bridgeport Financial, Inc.*, Case No. 3:04-cv-00478-CRB (N.D. Cal.) (Doc. 198) (order attached to Barnes Decl., Exhibit J.) On March 24, 2008, a $475 rate was approved. *Ondersma v. Metropolitan Life Ins. Co.*, 2008 WL 782522 (N.D. Cal.) On December 13, 2007, $400-450 rates were approved. *King v. Cigna Corp.*, 2007 WL 4365504 (N.D. Cal.). These rates are at the same as or higher than Barnes' and Bernhoft's proposed rates set forth in the motion and memorandum and are, therefore, very reasonable.

Based on all of Barnes' research, the prevailing rates of attorneys in Phoenix, Arizona range from $300 per hour to $500 per hour for comparable litigation skill. (Barnes Decl., ¶ 33.) In San Francisco, the rates range from $375 per hour to $500 per hour. (Barnes Decl., ¶ 34.) The hourly rates are for each individual attorney or paralegal are reasonable considering their respective skill.

Attorneys Robert Bernhoft ("Bernhoft") and Robert Barnes ("Barnes") charged $350 per hour for this case and Paralegal Daniel Treuden ("Treuden") charged $125. At the inception of this case four years ago, the billing rates for Bernhoft, Barnes and Treuden respectively were $450, $350, and $125. (Barnes Decl., ¶ 35.) Bernhoft agreed to handle two matters for Ralph Nader in 2004 at a

reduced rate. (Bernhoft Decl., ¶ 3.) Furthermore, the rates were not raised during this litigation because the Firm has a general policy against raising rates for clients during the coarse of litigation. *Id.*, ¶¶ 3-4. Notwithstanding this general policy, Nader and Daien are still entitled to a *reasonable* fee as calculated by the *Hensley* lodestar method, and their award should not be reduced by Bernhoft's good graces. *Bell*, 341 F.3d at 868 (9th Cir. 2003).

Bernhoft's, Barnes' and Treuden's respective current billing rates for new clients in complex matters are: $750 for Bernhoft and Barnes, and $250 an hour for Trueden. (Barnes Decl., ¶ 16.) While these rates reflect their national practice, this is still less than the $850 an hour market rates reported for highly skilled counsel in the Arizona area. (Barnes Decl., ¶ 33.)

Barnes and Bernhoft both graduated from Wisconsin Law School and obtained their licenses in 2001. (Barnes Decl., ¶ 17; Bernhoft Decl., ¶ 6.) Since that time, both Bernhoft and Barnes have demonstrated a high level of skill and have obtained a vast array of experience in complex civil and criminal cases. (Barnes Decl., ¶ 18; Exhibit B-1 and B-2.) Both Bernhoft and Barnes regularly appear in courts across the country. (Bernhoft Decl., ¶ 8; Barnes Decl., ¶ 19.)

Bernhoft and Barnes have also represented several other "third-party" candidates in their attempts to gain ballot access. (Barnes Decl., ¶ 20.) Both Barnes and Bernhoft employ more than ten years of experience in political third party issues dating to their pre-law school political involvement. (Barnes Decl., ¶ 20; Bernhoft Decl., ¶ 5.)

The Bernhoft Firm set precedent in this area of Constitutionally protected speech dating to 2002. *See Frami v. Ponto*, 255 F.Supp.2d 962 (W.D. Wis. 2003). In ballot-access-related litigation, the Bernhoft firm first represented Nader in Wisconsin wherein, for only the third time in the last century, the Wisconsin Supreme Court entertained an original action in a ballot-access case and Nader was

awarded a place on the ballot. (Bernhoft Decl., ¶ 5.) Treuden, on the other hand, is only six credits away from graduating from Marquette Law School. (Treuden Decl., ¶ 3.) His anticipated graduation date is December 30, 2008. *Id*. Treuden generally works directly with the attorneys on brief preparation and at times does the primary writing of "first drafts" of significant portions of briefs and motions. (Treuden Decl., ¶ 4.) Treuden's work during this case principally constituted work of a law student clerk, a step up over a typical paralegal.

Finally, Bernhoft and Barnes exhibited billing discretion in this case. On appeal, Bernhoft managed the litigation and provided support by reviewing the briefs prior to filing. (Bernhoft Decl., ¶ 9.) Barnes, the principal brief-drafter, spent the lions' share of the litigation time on this case given the fact that the brief drafting was largely non-delegable. (Barnes Decl., ¶ 21.) But as to what was delegable, Treuden provided support at a substantially reduced fee by formatting the briefs and motions and providing ancillary research. (Treuden Decl., ¶ 4.) *See Richin Security Service Co. v. Chertoff*, 128 S.Ct. 2007 (2008) (holding that prevailing parties in actions governed by the Equal Access to Justice Act are entitled to paralegal fees).

For all of these reasons, comparing Bernhoft and Barnes' experience to San Francisco's market rates for attorneys' fees in appellate litigation warrant a finding that Bernhoft's and Barnes' $450 and $350 hourly rates, respectively, are reasonable.

c. *The Hourly Rates Are Reasonable*.

The differences between the motion's request for $231,957.26 and the final amount requested in the amount of $265,361.98 is related to (1) additional fees and costs incurred after July 25, 2008 – fees which continue to accrue; (2) additional costs of litigation incurred after the filing of the motion on September 12, 2007; and (3) the fact that the original calculation erroneously requested reimbursement

of Atty. Bernhoft's fees at $350 per hour rather than $450, which is more appropriate pursuant to *Bell*, 341 F.3d 858. (Barnes Decl., ¶ 15.)

4. Supporting Documentation

Enclosed with this memorandum are the documents required by Local Civ. R. 54.2(d) and (e). Those documents include the Statement of Consultation, the fee agreements, the task-based itemized statements of fees and expenses, and the declarations of counsel. These documents are accurate to the best of Atty. Barnes' knowledge. (Barnes Decl., ¶ 37.)

WHEREFORE, for all of the foregoing reasons, Nader and Daien respectfully request an award of $265,361.98.

Dated at Malibu, California on this the 17th day of November, 2008.

THE BERNHOFT LAW FIRM, S.C.
Attorneys for the Plaintiffs

/s/ Robert E. Barnes

Robert E. Barnes
207 East Buffalo Street, Suite 600
Milwaukee, Wisconsin 53202
(414) 276-3333 telephone
(414) 276-2822 facsimile
rebarnes@bernhoftlaw.com